UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00483-FDW-DCK

| | | |
|---|---|---|
| E.P. and S.F., individually, and on behalf of others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| HARDEE'S FOOD SYSTEMS LLC, HARDEE'S RESTAURANTS LLC, CKE RESTAURANTS HOLDINGS, INC., and MORNING STAR, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

THIS MATTER is before the Court on Plaintiffs' Motion to Remand. (Doc. No. 17).

Defendants responded to Plaintiffs' motion on October 4, 2018, (Doc. No. 23), and Plaintiffs filed

a notice stating their intention to not reply. (Doc. No. 26). This Motion is now ripe for review. For

the reasons stated below, Plaintiffs' Motion to Remand is DENIED.

I. BACKGROUND

Plaintiffs filed this class action in state court after a Hepatitis A exposure event occurring

at a Hardee's restaurant in Charlotte, North Carolina. (Doc. No. 1-1, p. 17–18). According to

Plaintiffs, an employee diagnosed with Hepatitis A "potentially exposed thousands of customers

to the illness." Id. at 18. The Mecklenburg County Health Department announced around June 26,

2018 that all persons who consumed food or drink at the restaurant between June 13, 2018 and

June 23, 2018 were at risk of contracting Hepatitis A. Id. at 20. As a result of this incident, the

Mecklenburg County Health Department offered free Hepatitis A prevention treatment, and 2,056

individuals obtained such treatment. (Doc. No. 18, p. 5).

Plaintiffs brought this lawsuit on behalf of "all persons who dined on food and/or beverages purchased at the Hardee's quick-service restaurant located at 2604 Little Rock Road, Charlotte, North Carolina between June 13 and 23, 2018." (Doc. No. 1-1, p. 23). Plaintiffs allege three claims against all Defendants: 1) negligence, 2) product liability, and 3) breach of implied warranty of merchantability. Id. at 26–30. Plaintiffs allege that as a result of Defendants' misconduct, Plaintiffs and class members have "incurred the need for necessary medical care, treatment, and services . . .; incurred inconvenience and loss of time associated with such medical care, treatment, and services; [and] suffered serious emotional distress . . . ." Id. at 27. Plaintiffs state that both "Plaintiffs' and Class members' injuries are unknown and will require and will continue to require expensive medical care and treatment." Id. at 29. In addition to the above damages, Plaintiffs further ask for punitive damages and attorney fees. Id. at 30.

Defendants filed a Notice of Removal with this Court on August 31, 2018. (Doc. No. 1). Plaintiffs filed a Motion to Remand on September 20, 2018, arguing that this Court does not have jurisdiction over this case under the Class Action Fairness Act because 1) the amount in controversy in this case does not exceed $5,000,000, and 2) diversity does not exist in this case. (Doc. No. 17, p. 1). Plaintiffs ask for a remand to state court. Id. at 2.

## II. DISCUSSION

Under the Class Action Fairness Act ("CAFA"), a federal district court has jurisdiction over a class action with 1) more than 100 class members, 2) an amount in controversy exceeding $5,000,000, and 3) minimally diverse parties. 28 U.S.C. § 1332(d)(2); Scott v. Cricket Comms., LLC, 865 F.3d 189, 194 (4th Cir. 2017). It is uncontroverted that the purported class comprises over 100 class members. Thus, the only issues before the Court at this time are 1) whether the

amount in controversy in this case is greater than $5,000,000 and 2) whether the parties are minimally diverse. See 28 U.S.C. § 1332(d)(2).

A. Amount in Controversy

CAFA jurisdiction is only available when the amount in controversy exceeds $5,000,000. Id. Initially, a defendant seeking removal from state to federal court only needs to show "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff challenges removal, the defendant "bears the burden of *demonstrating* that removal jurisdiction is proper." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008) (emphasis in original).

When a plaintiff's complaint does not specify an amount of damages, "the defendant must provide evidence to show what the stakes of litigation are given the plaintiff's actual demands." Scott, 865 F.3d at 194 (citation and internal quotations omitted). After evidence has been submitted, the court decides whether the amount in controversy requirement has been met by a preponderance of the evidence standard. Id. To calculate the amount in controversy, "the court may look to the entire record before it and make an independent evaluation as to . . . the jurisdictional amount . . . ." McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001) (citation omitted).

"The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover, but an estimate of the amount that will be put at issue in the course of the litigation." Scott, 865 F.3d at 196 (citation and internal quotations omitted). Since "[e]stimating the amount in controversy is not nuclear science," a determination of an amount in controversy will necessarily require some "reasonable estimates, inferences, and deductions." Id.

In the present case, the Court finds that, by a preponderance of the evidence, the amount-in-controversy exceeds $5,000,000. The Court first notes that there is some ambiguity as to the purported class size. Defendants have submitted evidence that between June 13 through June 23, 2018, 4,677 transactions took place at the Hardees restaurant. (Doc. No. 23-4, p. 2). Defendants have further submitted evidence that between one to five customers are typically served per transaction. Id. at 3. Taking the two extremes, the number of individuals who were served at the restaurant between the two dates would range between 4,677 and 23,385. Based on this range of numbers, Defendants assert that the estimated class size is over "10,000 people given the number of times fast food orders are for more than one person." (Doc. No. 23, p. 9).[1]

On the other hand, Plaintiffs argue that only the 2,056 individuals who obtained treatment at the free health clinics should be considered as members of the class. (See Doc. No. 18, p. 5 ("[I]t is only to these individuals that class notice would (or could) be mailed.")). However, this assertion is completely contrary to Plaintiffs' own description of the purported class in the complaint. Named Plaintiffs brought this suit on behalf of all individuals who ate or drank at the Hardee's during the relevant time period, not just the ones that sought the free treatment offered by the Mecklenburg County Health Department. (See Doc. No. 1-1, p. 23). Therefore, the size of the class is likely to be much higher than Plaintiffs' purported 2,056 individuals.

At this point, it is impossible to determine a precise count of the individuals that were potentially exposed to Hepatitis A. However, based on the evidence so far, the Court finds that Defendants have established that the purported class is comprised of at least 5,000 individuals.[2] Based on this class size, Defendants must show that the amount in controversy is at least $1,000

---

[1] This estimate assumes that each transaction served, on average, 2.1 persons.
[2] This number is likely to be an underestimate for the class, since it would require that 93.5% of the 4,677 transactions only served a single customer.

per class member to reach the $5,000,000 threshold.

The damages that Plaintiffs assert on behalf of each member of the class seem to exceed this $1,000 per claim minimum. For instance, Plaintiffs allege that the "[c]lass members' injuries are unknown and will require . . . expensive medical care and treatment." (Doc. No. 1-1, p. 27). Furthermore, since Hepatitis A testing is not conclusive for recent exposures, all Plaintiffs and class members will allegedly have to "live with the anxiety, stress, and emotional distress that they may be infected with Hepatitis A" regardless of whether they were actually exposed to the virus. Id. at 23. Plaintiffs contend that any resulting illness "may last as long as six months, making some people 'too ill to work.'" Id. at 22. Overall, Plaintiffs' complaint alleges extensive damages to class members including: "lost wages, pain, suffering, humiliation, [and] loss of enjoyment of life." Id. at 20. In addition to these compensatory damages, Plaintiffs' complaint seeks attorney fees and punitive damages. Id. at 30. All of these alleged damages likely put the amount in controversy for each claim far beyond the $1,000 threshold necessary to establish CAFA jurisdiction for 5000 class members. The fact that 5,000 may be a conservative estimate for the class size only makes it more likely that the amount in controversy exceeds $5,000,000.

The Court has considered Plaintiffs' arguments to the contrary and find them to be without merit. Plaintiffs first state that they "are willing to stipulate that damages in excess of $1,000 are not being sought in the present case." (Doc. No. 18, p. 6 n.3). This proposed cap on damages clearly runs contrary to the damages that Plaintiffs allege in the complaint. See Strawn, 530 F.3d at 295 (analyzing whether the amount in controversy had been met by looking at damages alleged in the complaint). Such a stipulation is also inappropriate due to Plaintiffs' duty to represent absent class members. At this early stage, Plaintiffs could not possibly state that each class member who was exposed to Hepatitis A suffered no more than $1,000 in damages. Therefore, Plaintiffs'

proposed cap on damages does not justify a remand to state court.

Plaintiffs further argue that Defendants cannot meet the amount in controversy requirement because "in over fifteen years, no hepatitis A shot-class claim has ever been settled or been adjudicated for an amount more than $500 per claim, with most settling for less than $300 per claim." (Doc. No. 18, p. 6). However, what Plaintiffs and class members stand to actually recover is not determinative at this stage. See Scott, 865 F.3d at 196 ("The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover, but an estimate of the amount that will be put at issue in the course of the litigation."). Plaintiffs have put a substantial amount of damages per class member at issue in their complaint, and they cannot limit those allegations now to avoid federal court jurisdiction.

For the foregoing reasons, the Court finds, by a preponderance of the evidence, that the amount in controversy for this case exceeds $5,000,000.

## B. Minimal Diversity

Plaintiffs also contend that this Court lacks jurisdiction over the case because diversity does not exist between the parties. (Doc. No. 18, p. 6). Plaintiffs argue that because Defendant Morning Star's principal place of business is located in North Carolina, where the Plaintiffs reside, there is no diversity. Id. at 9. This argument is unpersuasive.

CAFA amended the traditional concept of diversity jurisdiction for class actions to only require minimal diversity. Johnson v. Advance America, 549 F.3d 932, 935 (4th Cir. 2008). Minimal diversity is satisfied as long as *any* member of a class of plaintiffs is a citizen of a State different from *any* defendant. 28 U.S.C. § 1332(d)(2)(a). For the purposes of determining citizenship for diversity jurisdiction, a corporation is a citizen of the state where it is incorporated and where it maintains a principal place of business. Id. (c)(1). Likewise, the citizenship of an

unincorporated association is determined by "where it has its principal place of business and the State under whose laws it is organized." Id. (d)(10). In Hertz Corp. v. Friend, 559 U.S. 77 (2010), the Supreme Court adopted the "nerve center test" and ruled that the principal place of business "refer[red] to the place where a corporation's officers direct, control and coordinate the corporation's activities." Id. at 93; see also Central W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 107 (4th Cir. 2011) (adopting the nerve center test after Hertz).

Here, Plaintiffs argue that Morning Star is a citizen of North Carolina because "the North Carolina market is its primary business location" and an "overwhelming majority of its locations are based in" North Carolina. (Doc. No. 18, p. 9). According to Plaintiffs, the "bulk of corporate activity" overwhelms the fact that Morning Star is directed by an officer located in New York in determining principal place of business. See id. However, the case Plaintiffs cite to, Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698 (4th Cir. 2010), is no longer good law with regards to determining principal place of business, as it clearly utilizes the antiquated "place of operations test." See id. ("[T]he place of operations test should be applied to most accurately reflect its principal place of business."). Since Ferrell, the Supreme Court and the Fourth Circuit have adopted the alternative "nerve center test" to determine an entity's principal place of business. See Hertz, 559 U.S. at 93; Central W. Va. Energy Co., 636 F.3d at 107 ("[T]he touchstone now for determining a corporation's principle place of business for diversity purposes is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."). Thus, regardless of how many stores Defendant Morning Star operates in North Carolina, Morning Star's principal place of business is New York, where the company's officers direct and control the company. (See Doc. No. 2-B); see also Hertz, 559 U.S. at 93.

Even assuming, *in arguendo*, that Defendant Morning Star is a citizen of North Carolina,

minimal diversity in this case would still exist. See 28 U.S.C. § 1332 (d)(2)(A) (requiring "any member of a class of plaintiffs" to be a citizen of a different state from "*any* defendant") (emphasis added). Plaintiffs make no argument towards the citizenship of some of the other Defendants. For example, Defendant CKE is a Delaware corporation with its principal place of business in Tennessee (Doc. No. 1, p. 10). Thus, based on this Defendant, minimal diversity would exist as long as some of the Plaintiff class members were citizens of North Carolina.

For the reasons stated above, the Court concludes that CAFA's requirement of minimal diversity is met in this case.

CONCLUSION

Therefore, because 1) the amount in controversy likely exceeds $5,000,000, 2) minimal diversity exists, and 3) there are more than 100 members in the proposed plaintiff class, the Court currently finds that it has jurisdiction over this case under the Class Action Fairness Act. See 28 U.S.C. §1332(d)(2). Plaintiffs' Motion to Remand, (Doc. No. 17), is hereby DENIED. However, the Court notes *sua sponte* that the presence of Defendant Hardee's Food Systems LLC may trigger the local controversy exception to CAFA jurisdiction. See 28 U.S.C. § 1332(d)(4). Parties are hereby ORDERED to submit additional briefing to the Court on this issue no later than November 16, 2018. Parties are further ORDERED to proceed according to the guidelines laid out in the Court's earlier orders entered on September 24, 2018. (Doc. Nos. 21, 22).

IT IS SO ORDERED.

Signed: October 31, 2018

Frank D. Whitney
Chief United States District Judge